NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

LEE HARDING, et al., *Plaintiffs/Appellants*,

*v.*

DAVID NATHAN STERNSHER, dba SMART SMILES AZ, dba GREAT BRACES FOR LESS, dba GREAT BRACES 4 LESS, *Defendant/Appellee*.

No. 1 CA-CV 16-0127
FILED 7-25-2017

Appeal from the Superior Court in Maricopa County
No. CV2013-010869
The Honorable Christopher T. Whitten, Judge

**AFFIRMED IN PART; REVERSED IN PART AND REMANDED WITH INSTRUCTIONS**

COUNSEL

Law Offices of David W. Dow, Phoenix
By Carmen A. Chenal
*Counsel for Plaintiffs/Appellants*

Israel & Gerity, PLLC, Phoenix
By Michael E. Gerity
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Patricia K. Norris[1] and Judge Jay M. Polk joined.[2]

---

J O H N S E N, Judge:

¶1        Plaintiffs Lee Harding, Julie Harding and Kidz Connextion, P.C., appeal the superior court's judgment in favor of defendant David Nathan Sternsher.  For the following reasons, we reverse the court's summary judgment for Sternsher on conversion and remand for further proceedings solely on that claim.  We affirm the remainder of the judgment.

### FACTS AND PROCEDURAL BACKGROUND

¶2        Lee Harding owned Kidz Connection, a dental practice specializing in pediatric dentistry that, until June 2012, employed dentist David Sternsher.  Beginning in September 2012 and continuing through August 2013, several negative reviews of Kidz Connextion were posted anonymously on the internet.  The online reviews complained about long wait times, poor customer service and unprofessional behavior at Kidz Connextion and alleged that employees improperly restrained patients.  In addition, in December 2012, an unidentified person sent a letter to Phoenix Health Plan ("PHP"), a program that contracts with the Arizona Health Care Cost Containment System ("AHCCCS"), alleging that Kidz Connection was committing insurance fraud and abusing patients.  In response to the letter, PHP suspended Kidz Connection from treating any PHP patients and commenced an investigation.  PHP ultimately reinstated Kidz Connection's credentials.

¶3        After he left Kidz Connection, Sternsher and five other former Kidz Connextion employees filed a complaint with the Arizona State Board

---

[1]     The Honorable Patricia K. Norris, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3, of the Arizona Constitution.

[2]     The Honorable Jay M. Polk, Judge of the Arizona Superior Court, has been authorized to sit in this matter pursuant to Article VI, Section 3, of the Arizona Constitution.

of Dental Examiners in which they alleged Lee Harding and Kidz Connextion over-diagnosed and over-treated patients, and used improper material for restorations. They also alleged Kidz Connextion allowed dentists who were not credentialed by a patient's insurance plan to perform dental work, and then fraudulently billed the insurance plan by having a credentialed dentist sign the paperwork. Sternsher also sent a copy of this letter to AHCCCS and other AHCCCS service providers.

¶4 The plaintiffs filed this action against Sternsher and the other former Kidz Connextion employees who signed the Dental Board complaint, alleging they were responsible for the negative online reviews and the anonymous letter to PHP. The complaint alleged defamation, tortious interference with business relations, conversion, intentional infliction of emotional distress and negligent infliction of emotional distress. In his answer, Sternsher alleged a counterclaim for breach of contract.

¶5 Before trial, the plaintiffs dismissed their claims against all the defendants except Sternsher. The superior court granted Sternsher summary judgment on the claims alleging conversion, intentional infliction of emotional distress and negligent infliction of emotional distress. That left for trial Sternsher's counterclaim for breach of contract for failure to reimburse him for orthodontic supplies, and the plaintiffs' claims for defamation and tortious interference with business relations. The plaintiffs did not assert any damages arising out of the letter to the Dental Board and AHCCCS, but instead confined themselves to the online reviews and the PHP letter.

¶6 The jury found in favor of Sternsher on all claims, awarding him $1,997 on his counterclaim. The plaintiffs timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1) (2017).[3]

## DISCUSSION

### A. Summary Judgment on the Plaintiffs' Tort Claims.

¶7 In reviewing a grant of summary judgment, this court will determine *de novo* whether any genuine issues of material fact exist and whether the superior court incorrectly applied the law. *L. Harvey Concrete, Inc. v. Agro Constr. & Supply Co.*, 189 Ariz. 178, 180 (App. 1997). We review

---

[3] Absent material revision since the relevant events, we cite the current version of applicable statutes.

the facts in the light most favorable to the parties against whom summary judgment was entered. *Id.* Summary judgment is appropriate "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990).

### 1. Conversion.

¶8        In their claim for conversion, the plaintiffs alleged Sternsher stole dental supplies while he was working for Kidz Connextion.

¶9        "Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Miller v. Hehlen*, 209 Ariz. 462, 472, ¶ 34 (App. 2005) (citing Restatement (Second) of Torts § 222A(1) (1965)). To prove conversion, a plaintiff must show that the defendant improperly and intentionally exerted control and dominion over plaintiff's goods, thereby causing damage. *Focal Point, Inc. v. U-Haul Co. of Ariz.*, 155 Ariz. 318, 320 (App. 1986).

¶10        In his motion for summary judgment, Sternsher argued the plaintiffs had not produced any evidence to support their claim. In response, Lee Harding offered his declaration that Sternsher had access to Kidz Connextion's dental supplies before the company terminated him and certain supplies and instruments that were particularly related to Sternsher's work disappeared at times that corresponded to his shifts at Kidz Connextion. The superior court ruled that the plaintiffs did not set forth any evidence that Sternsher took the dental supplies and Lee Harding's speculation that Sternsher was the most likely suspect was not sufficient to create a material question of fact.[4]

---

[4]        Sternsher argues the superior court rejected Lee Harding's declaration because it was produced after the discovery deadline and in response to Sternsher's motion for partial summary judgment. Sternsher, however, did not move to strike the declaration, and the record does not contain any indication that the court disregarded it. To the contrary, it appears the court considered the declaration but found it insufficient to create a material question of fact.

¶11        Contrary to the ruling of the superior court, the plaintiffs offered sufficient evidence to allow a reasonable jury to find that Sternsher converted the supplies. A party may support its conversion claim by circumstantial evidence, so long as it is not mere suspicion or conjecture. *Performance Sys., Inc. v. Kahl*, 24 Ariz. App. 92, 94 (1975). The evidence the plaintiffs offered went beyond speculation, as Lee Harding averred that he inventoried Kidz Connextion's dental supplies weekly and the discrepancies "always corresponded" to when Sternsher worked at Kidz Connextion. In addition, Lee Harding's declaration established that the missing supplies were specialized equipment that had "no value to anyone other than a dentist who owns a pediatric clinic" and disappeared at a time when Sternsher was opening his own clinic. The plaintiffs therefore offered not just suspicion and conjecture, but circumstantial evidence that established a motive and a pattern from which a reasonable jury could infer that Sternsher took the supplies. *Orme Sch.*, 166 Ariz. at 309 (summary judgment is only appropriate when reasonable people could not agree with the conclusion advanced by the non-moving party).

### 2.        Emotional distress claims.

#### a.        Intentional infliction of emotional distress.

¶12        The Hardings alleged Sternsher intentionally caused them severe emotional distress through extreme and outrageous conduct. The superior court ruled that because the Hardings had failed to produce any evidence of severe emotional distress, they could not recover on this claim. The Hardings argue the court erred because Sternsher's conduct aggravated Lee Harding's blocked artery condition and caused him insomnia for which his physician prescribed a sleep medication.[5]

¶13        To establish a claim for intentional infliction of emotional distress, a plaintiff must show that (1) the defendant's conduct was extreme and outrageous, (2) the defendant either intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result from his conduct, and (3) the defendant's actions caused the plaintiff to suffer severe emotional distress. *Ford v. Revlon, Inc.*, 153 Ariz.

---

[5]        Julie Harding argues she "suffered as a result of [Sternsher's] outrageous conduct and the resulting consequence," but does not identify the nature of her alleged suffering or any evidence in the record that supports her claim. Because she did not adequately develop this argument, we do not consider it. *Schabel v. Deer Valley Unified Sch. Dist. No. 97*, 186 Ariz. 161, 167 (App. 1996).

38, 43 (1987). Arizona courts apply a case-by-case analysis to determine whether a plaintiff has offered sufficient proof of severe emotional distress. *Lucchesi v. Frederic N. Stimmell, M.D., Ltd.*, 149 Ariz. 76, 79 (1986). "A line of demarcation should be drawn between conduct likely to cause mere 'emotional distress' and that causing 'severe emotional distress.'" *Midas Muffler Shop v. Ellison*, 133 Ariz. 194, 199 (App. 1982) (citation omitted); *see also* Restatement (Second) of Torts § 46 cmt. j (1965) (liability only arises when emotional distress is extreme; "Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people."). Thus, crying, being stressed and upset, and having occasional trouble sleeping is not enough to establish severe emotional distress. *Midas Muffler Shop*, 133 Ariz. at 199. On the other hand, anxiety that results in physical symptoms such as high blood pressure, a nervous tic, chest pains, fatigue and dizziness may constitute severe emotional distress. *Ford*, 153 Ariz. at 41; *see also Pankratz v. Willis*, 155 Ariz. 8, 12, 17 (App. 1987) (anger and depression coupled with physical ailments such as headaches and hemorrhoids supported claim for emotional distress).

¶14 In support of his claim for intentional infliction of emotional distress, Lee Harding submitted his own declaration that Sternsher's actions had aggravated his existing medical condition (a vertebral artery blockage) "to the point of [it] being an emergent condition," but he did not explain how (or if) the supposed exacerbated condition had any physical manifestations or avow that he had received any medical treatment for it. Moreover, Harding claimed he suffered from insomnia due to "job stress and anxiety" but did not offer any evidence that it was Sternsher's conduct, and not other employment-related stressors, that caused the stress and anxiety leading to the insomnia.

¶15 This evidence did not create a material question of fact regarding whether Sternsher's actions caused Lee Harding severe emotional distress. *See Midas Muffler Shop*, 133 Ariz. at 199 (citing as examples of severe emotional distress cases in which (1) plaintiff suffered heart attack and nervous exhaustion, (2) plaintiff's fright resulted in premature birth of a dead baby, (3) plaintiff was found writhing in bed in a state of extreme shock and hysteria, (4) plaintiff suffered severe headaches and stress and her state of anxiety ultimately required hospitalization, (5) plaintiff suffered from multiple sclerosis, and stress caused by the defendant's conduct caused a relapse that resulted in permanent impairment of her condition).

### b.     Negligent infliction of emotional distress.

**¶16**     The Hardings likewise did not present sufficient evidence to create a material issue of fact regarding negligent infliction of emotional distress.  To establish this claim, the plaintiff must prove that he or she "witnessed an injury to a closely related person, suffered mental anguish manifested as physical injury, and was within the zone of danger so as to be subjected to an unreasonable risk of bodily harm created by the defendant." *Rodriguez v. Fox News Network, L.L.C.*, 238 Ariz. 36, 39, ¶ 7 (App. 2015).  The Hardings did not present any evidence that they witnessed injury to a loved one or were in a zone of danger.  In addition, as discussed, Lee Harding's declaration did not substantiate his claim that Sternsher's conduct caused him emotional distress of such severity that it resulted in physical manifestations.  *See also Gau v. Smitty's Super Valu, Inc.*, 183 Ariz. 107, 109 (App. 1995) (transitory physical symptom such as insomnia does not support a claim for negligent infliction of emotional distress).

## B.     Exclusion of Audio Recordings.

**¶17**     The plaintiffs also argue the superior court abused its discretion at trial by excluding certain audio recordings of Sternsher that reflected his animus toward Lee Harding and Kidz Connextion.  We review the court's exclusion of evidence for an abuse of discretion and will not disturb such a ruling "unless a clear abuse of discretion appears and prejudice results." *Gemstar Ltd. v. Ernst & Young,* 185 Ariz. 493, 506 (1996).

**¶18**     In Spring 2013, Kidz Connextion employee Felix Lucero secretly recorded several conversations in which Sternsher asked him to gather evidence to support Sternsher's planned Dental Board complaint (the "Lucero recordings").  In the recordings, Sternsher repeatedly expressed his hostility toward Lee Harding, stating he wanted to "bury" him and put him and Kidz Connextion out of business.  Sternsher moved *in limine* to exclude the audio recordings, arguing they were not relevant to any element of the defamation and tortious interference claims and their prejudicial effect would outweigh any probative value.  The plaintiffs maintained the recordings were not unfairly prejudicial and showed Sternsher's malicious intent, a matter relevant to both claims and their request for punitive damages.

**¶19**     At the superior court's request, the plaintiffs designated the specific portions of the Lucero recordings they intended to introduce in evidence at trial.  Sternsher objected to the admission of any portion of the Lucero recordings, but submitted counter-designations that he asserted

also should be presented to the jury if the court allowed the recordings. On the first day of trial, the court excluded the Lucero recordings, ruling the proffered sections were confusing, misleading and unfair and that the recordings were more prejudicial than probative. Nevertheless, the court allowed the plaintiffs to impeach Sternsher with portions of the recordings several times during his testimony.

¶20        The plaintiffs argue the superior court abused its discretion by excluding the Lucero recordings because the probative value of the recordings (demonstrating Sternsher's malicious intent toward Lee Harding and Kidz Connexion) outweighed their prejudicial nature. The superior court may exclude relevant evidence under Arizona Rule of Evidence 403 if its probative value is "substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *State v. Hardy*, 230 Ariz. 281, 291, ¶ 49 (2012). The superior court has considerable discretion when weighing these factors, *State v. Gibson*, 202 Ariz. 321, 324, ¶ 17 (2002), and we will not disturb its ruling absent an abuse of discretion and resulting prejudice. *Yauch v. S. Pac. Transp. Co.*, 198 Ariz. 394, 404, ¶¶ 28-30 (App. 2000).

¶21        We conclude the superior court abused its discretion by ruling that the probative value of the Lucero recordings was outweighed by a danger of unfair prejudice and confusion. The recordings, which over and over captured Sternsher using profane language to describe his disdain for Lee Harding and Sternsher's desire to put Kidz Connexion out of business, constituted powerful evidence of Sternsher's intent, which was relevant both to the plaintiffs' claim for defamation and their claim for tortious interference with business relations. *See*, *e.g.*, *Reynolds v. Reynolds*, 231 Ariz. 313, 317, ¶ 8 (App. 2013); *Antwerp Diamond Exch. of America, Inc. v. Better Bus. Bureau of Maricopa County, Inc.*, 130 Ariz. 523, 529-30 (1981). Nevertheless, the court's ruling did not prejudice the plaintiffs because the court allowed them to use key portions of the recordings as impeachment during their cross examination of Sternsher. For example, the passages the plaintiffs used to impeach Sternsher included his statements that he wanted to "bury" Lee Harding by shutting down his business and leaving him "broke" and, possibly, in jail. The court also allowed the plaintiffs to impeach Sternsher with his statement that he expected his own business to benefit if he was able to "bury" Lee Harding and Kidz Connexion. These excerpts amply demonstrated Sternsher's animus toward Lee Harding and Kidz Connexion.

**¶22**        Accordingly, because the superior court's ruling excluding the Lucero recordings did not prejudice the plaintiffs, we will not reverse the jury's verdict on that ground. *Yauch*, 198 Ariz. at 404, ¶¶ 28-30.

## C.    Breach of Contract Claim.

**¶23**        Finally, the plaintiffs argue the superior court erred by granting judgment on the jury's verdict in favor of Sternsher on his counterclaim for breach of contract because no written contract existed. Arizona law permits the enforcement of an oral contract, *see* A.R.S. § 12-543 (2017), and Sternsher testified that Lee Harding agreed that Kidz Connextion would reimburse him for one-half of the costs of the orthodontic supplies and materials he used for Kidz Connextion patients, but it failed to pay the last invoice.

## CONCLUSION

**¶24**        For the foregoing reasons, we reverse the superior court's summary judgment for Sternsher on the plaintiffs' conversion claim and remand for further proceedings solely on that claim. We affirm the remainder of the judgment.

**¶25**        Both parties request an award of attorney's fees on appeal pursuant to A.R.S. § 12-341.01 (2017), which allows a court to award the successful party reasonable attorney's fees in a contested action arising out of contract. In our discretion, we decline to award fees to either party. *See Munger Chadwick, P.L.C. v. Farwest Dev. & Const. of the Sw., LLC*, 235 Ariz. 125, 128, ¶ 14 (App. 2014). We also decline to award costs to either party. Although we are remanding the plaintiffs' conversion claim, we cannot know whether the plaintiffs ultimately will prevail on that claim. *See* A.R.S. § 12-342(A) (2017).

